IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

AUG 16 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

**UNITED STATES OF AMERICA,**

v.                       **CRIMINAL ACTION NO. 2:12cr105**

**STEPHEN G. FIELDS,**

    **Defendant.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Stephen G. Fields' Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c) and Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33. (ECF Nos. 452 and 460). The Defendant and the Government have fully briefed this matter and it is now ripe for disposition. For the reasons stated herein, Defendant's Motions are **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 11, 2012, the Government filed a twenty-five (25) count Indictment against Defendants Edward J. Woodard, Simon Hounslow, Stephen G. Fields, Troy Brandon Woodard ("Brandon Woodard"), Thomas Arney, and Dwight Etheridge on various charges related to the collapse of the Bank of the Commonwealth (the "Bank"). On December 20, 2012, a federal grand jury returned a twenty-six (26) count Superseding Indictment against the Defendants. Specifically, the Superseding Indictment charged Defendant Stephen G. Fields with Conspiracy to Commit Bank Fraud (18 U.S.C. § 1349), False Entry in a Bank Record (18 U.S.C. §§ 1005 & 2), False Statement to a Financial Institution (18 U.S.C. §§ 1014 & 2), and Misapplication of

Bank Funds (18 U.S.C. § 656 & 2).

On March 19, 2013, a jury trial commenced in the United States District Court for the Eastern District of Virginia, before the Honorable Raymond A. Jackson. Trial in this matter lasted approximately ten weeks. At the close of the Government's case, Defendant moved for a judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29(a). The Court denied Defendant's motion. On May 14, 2013, at the close of all the evidence, Defendant renewed the motion for judgment of acquittal. The Court again denied the motion and submitted all counts to the jury. On May 24, 2013, the jury returned a verdict finding Defendant guilty of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C § 1349, two counts of False Entry in a Bank Record in violation of 18 U.S.C. § 1005, two counts of Misapplication of Bank Funds in violation of 18 U.S.C § 656, and one count of False Statements to a Financial Institution in violation of 18 U.S.C § 1014. Defendant now moves the Court to grant a new trial and judgment of acquittal on all counts.

## II. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29") provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal," where the defendant has successfully challenged the sufficiency of the evidence used to convict him. FED. R. CRIM. P. 29(c)(2). "A defendant challenging the sufficiency of the evidence to support his conviction carries a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citations omitted). In reviewing a Rule 29 challenge to a conviction, a court inquires whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Deference to the trier of fact requires that the

court "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *Johnson*, 55 F.3d at 979.

In its sufficiency review, a court considers both the circumstantial and direct evidence. *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008); *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) (noting "circumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence"). However, assessing the credibility of witnesses is within the sole province of the jury. *See Johnson*, 55 F.3d at 979; *United States v. Uzenski*, 434 F.3d 690, 700 (4th Cir. 2006). The uncorroborated testimony of a single witness may be sufficient to sustain a guilty verdict, even if that witness is an accomplice, co-defendant, or informant. *See United States v. Wilson*, 115 F.3d 1185, 1189-90 (4th Cir. 1997); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983).

Federal Rule of Criminal Procedure 33 ("Rule 33") provides, in part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED.R.CRIM.P. 33(a). In deciding a motion for a new trial, the court is not constrained by the requirement that it view the evidence in the light most favorable to the government. Thus, it may evaluate the credibility of the witnesses. However, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") instructs that a reviewing court "should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216–17 (4th Cir. 2006) (citation omitted).

3

### III. DISCUSSION

#### A. Motion for Judgment of Acquittal

*i. Intent to Defraud*

Defendant argues that the Government's evidence is insufficient to prove that he intended to injure or defraud the Bank on each count of the Superseding Indictment. The Court finds that, given the weight of the evidence and totality of the circumstances, the jury had ample proof from which to conclude that Defendant intended to harm the Bank. Direct evidence of a scheme to defraud is not necessary to sustain a conviction—specific intent to defraud may be inferred from the totality of the circumstances. *United States v. McLean*, 715 F.3d 129, 138 (4th Cir. 2013) (quoting *United States v. Harvey*, 532 F.3d 326, 334 (4th Cir. 2008)). In fact, the jury heard from Defendant, who testified that as a former federal bank examiner, he was familiar with safe and sound banking practices. Defendant was alleged to have violated these practices by, *inter alia*, manipulating change in terms agreements, using loans to pay other loans, knowingly using nominee borrowers, and illegitimately overdrawing customer accounts. The Government called several witnesses, including a Federal Bank Examiner, who testified that the practices Defendant engaged in foreseeably harmed the Bank. In light of the proof submitted at trial, the jury had sufficient evidence from which to conclude that by knowingly acting in contravention of numerous safe and sound practices, Defendant intentionally harmed the Bank.

*ii. Count 1: Conspiracy*

Defendant's indictment and eventual conviction in this case stem from his role as a Senior Vice President and Commercial Loan Officer at the now-defunct Bank of the Commonwealth. The essence of the Government's case at trial was a conspiracy "involving a reciprocal relationship between [B]ank insiders and certain troubled borrowers whereby such

troubled borrowers performed favors for [B]ank insiders in exchange for preferential treatment" that contributed to the Bank's collapse in 2011. Gov.'s Resp. Mot. 4. Over the course of the ten week trial, the Government called 46 witnesses, including three of the troubled borrowers Defendant serviced as a loan officer at the Bank. Those troubled borrowers, Thomas Arney, Eric Menden, and George Hranowskj, were co-conspirators who testified that they participated in an agreement with Defendant to provide favors for the Bank in exchange for preferential treatment. They testified that, at Defendant's request, they took over Bank-owned troubled assets, purchased stock in other banks, "bid up" properties at foreclosure auctions, and purchased the Bank President's son's properties. They testified that, in exchange, Defendant allowed them to overdraw their checking accounts, obtain loans with no documentation, and receive unlimited credit. Most notably, the jury saw a letter written from George Hranowskj to Defendant, in which Hranowskj itemized all of the favors he and his business partner performed for the Bank in exchange for the promise of lower interest rates. Gov't. Ex. 1E-89. The testimony of these witnesses alone is sufficient to support the jury's guilty verdict. *Wilson*, 115 F.3d at 1190 (" . . . the uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction").

The Government also presented over 600 exhibits, including photographs, promissory notes, purchase agreements, commercial credit reviews, credit/debit tickets, letters, bank statements, and Defendant's own emails, most of which tended to substantiate the conspiracy charge. The Government need not present a "smoking gun" or otherwise prove the existence of an express agreement in order to provide sufficient evidence of a conspiracy. It is well established in this Circuit that, in a conspiracy prosecution, the Government need not prove that the agreement was explicit. *United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996) (citing

*Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975)); *see also United States v. Morsley*, 64 F.3d 907, 919 (4th Cir. 1995) (holding that there need not be evidence of a specific agreement in order to sustain a conspiracy conviction), *cert. denied*, 516 U.S. 1065 (1996). Further, a conspiracy can be inferred from the facts and circumstances of the case. *Burgos*, 94 F.3d 849, 861 (citation omitted); *see United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) ("circumstantial evidence . . . may be sufficient to support a guilty verdict . . ."). The Court FINDS that, based on the evidence introduced at trial, the jury had sufficient evidence upon which to base its finding of guilt on the conspiracy charge.

### iii. *Counts 5 and 6: False Entry in a Bank Record*

Defendant argues now, as he did before the jury, that the evidence is insufficient to sustain the False Entry in a Bank Record convictions because the loans were not in fact past due. In Counts 5 and 6 of the Superseding Indictment, the Government charged Defendant with making a false entry on the Bank's January 31, 2008 and March 31, 2008 past due reports. The Bank's accounting system generated a monthly report of customers who were past due on their loan payments. Those "past due reports" were then sent along to the Bank's Board of Directors. The Government introduced multiple records, including actual computer-generated past due reports, that indicated certain loans for which Defendant was responsible were past due. However, those delinquent loans did not appear on the past due report submitted to the Bank's Board of Directors. From this evidence, a rational juror could conclude that these documents had been altered. *See e.g.*, Gov't. Exs. 6A, 6E, 5A, and 5G.

The jury could also reasonably reject Defendant's argument and conclude that he created a false entry because he misrepresented the true status of the loans. *See Agnew v. United States*, 165 U.S. 36, 52 (1897) (upholding lower court's instruction that "[a false entry] includes

any entry on the books of the bank which is intentionally made to represent what is not true or does not exist . . . ."); *United States v. Krepps*, 605 F.2d 101, 108-109 (3rd Cir. 1979) (citing *Agnew*); *see also United States v. Weidner*, 437 F.3d 1023, 1045 (10th Cir. 2006) (upholding false entry conviction where defendant failed to disclose material information).

At trial, the Government contended that Defendant, without the true borrowers knowledge, made these loans appear "paid" using illegitimate means. The Government presented evidence that Defendant used "washed" funds by taking the proceeds from Loan A and depositing them into George Hranowskj's checking account, then immediately withdrawing those funds to make overdue payments on Loan B. The jury saw an email from Hranowskj in which he indicated that Defendant did not notify or consult him about how these loans payments were made. *See* Gov't. Ex. 5F ("My account was debited $59,440.67 and I was not notified"). Defendant's argument that Hranowskj and his partner made these payments runs counter to the weight of the evidence presented at trial and thus, the jury had sufficient evidence to find him guilty of these charges.

*iv. Count 10: Misapplication of Bank Funds*

Defendant was convicted of causing loan documents to be created that falsely indicated a $185,000 loan to Thomas Arney would be used to purchase 100 shares of Bank of the Currituck stock, when in fact Defendant knew that part of the loan proceeds were for other purposes. Thomas Arney testified, and Defendant confirmed on cross examination, that before the loan closed he told Defendant that he was only able to buy 60 shares of stock worth $111,000. Yet, the jury saw evidence that Defendant still funded the entire loan amount requested. Arney testified that Defendant instructed him to use the remaining money to pay real estate bills and taxes. Defendant also concedes that only 60 shares of Currituck Bank stock collateralizing the

loan were placed in the loan file. Def.'s Mot. for J. of Acquittal 9. However, Defendant's loan assistant testified that Defendant directed her to prepare a collateral receipt which indicated that 100 shares of stock secured the loan. Gov't. Ex. 10C. From this evidence, the jury had sufficient grounds to conclude that the Government carried its burden of proof.

*v. Counts 13 and 14: Misapplication of Bank Funds and False Statement to a Financial Institution*

Counts 13 and 14 charged Defendant with providing false statements (18 U.S.C. § 1014) and misapplying bank funds (18 U.S.C. § 856) by facilitating a series of loans totaling $250,000 to Thomas Arney's children, Ryan and Ashley Arney. The Government alleged that Defendant caused the loans to be made knowing that Arney's children were in fact nominee borrowers for their father. *United States v. Luke*, 701 F.2d 1104, 1107 (4th Cir. 1983) (adopting the categories established in *United States v. Gens*, 493 F.2d 216, 221 (1st Cir. 1974) which defined nominee transactions as "those in which bank officials knew that the named debtor was financially incapable of paying the loan . . . [or] where the debtor allowed only his name to be used, enabling the bank officials to grant a *de facto* loan to a third party to whom the bank was unwilling to grant a formal loan"). Defendant renews his argument that the borrowers were not in fact nominees and makes an unpersuasive claim that allegations of loans to a nominee borrower cannot form the basis of a § 1014 violation. *See United States v. Hoffman*, 94 F.3d 642 (4th Cir. 1996) (unpublished) (upholding jury verdict where defendant was found guilty of violating § 1014 when he agreed to serve as a nominee for a loan to a third party).

The Government presented ample evidence that Defendant knowingly facilitated loans to nominee borrowers and provided false statements as to the true guarantors of several loans. Thomas Arney testified that, after Defendant informed him that he was ineligible to borrow more

money, Defendant processed several loans to his children knowing that Mr. Arney was the true borrower. Moreover, Thomas Arney testified that he requested and negotiated these transactions alone and his children never met with Defendant or asked for these loans. Further, Arney testified that, for at least one of the loans, Arney informed Defendant that he would be using some of the funds to pay his own personal bills. Nonetheless, Defendant generated loan documents listing Mr. Arney's children as the guarantors, knowing that they had no ability to repay them. Mr. Arney testified that Defendant was familiar with his children and knew that his son was a student and his daughter was a waitress who made $2.13 per hour. *See* Gov't. Ex. 15K (personal financial statement listing Ashley Arney's salary as $26,000 per year). The jury had sufficient evidence from which to conclude Defendant provided false statements to the Bank.

The Misapplication of Bank Funds conviction is also properly supported. The Fourth Circuit has held that the "knowing participation of bank officials in [nominee] loans could have been found to have a 'natural tendency' to injure or defraud their banks and thus constitute willful misapplication within the meaning of § 656." *United States v. Luke*, 701 F.2d 1104, 1107 (4th Cir. 1983) (citations omitted). Using the very same evidence presented on the False Statement charge, the jury could reasonably conclude that Defendant misapplied bank funds.

Defendant moved for a Judgment of Acquittal during trial at the close of the Government's evidence and before this case was sent to the jury. The Court heard lengthy arguments in support of Defendant's Motion. Defendant offers no new persuasive grounds for the instant Motion. The Court FINDS that Defendant has failed to establish that there was insufficient evidence to support his conviction. Accordingly, his Motion for Acquittal is **DENIED**.

**B. Motion for New Trial**

A new trial is a drastic remedy intended for the rare case. *United States v. Chin*, 181 F.3d 92 (4th Cir. 1999) (unpublished). A district court should exercise its discretion to grant a new trial "sparingly" and "only when the evidence weighs heavily against the verdict." *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997); *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985).

After thoroughly reviewing all the evidence and considering the arguments from both parties, the Court FINDS that the interests of justice do not require a new trial. *See Arrington*, 757 F.2d at 1486. As discussed above, abundant evidence supports the jury's verdict. Accordingly, Defendant's Motion for a New Trial is **DENIED**.

## IV. CONCLUSION

The Court conducted a lengthy trial in this case, during which the Government presented the testimony of numerous witnesses and introduced hundreds of documents. The jury had sufficient evidence to support its guilty verdict. For the reasons stated above, Defendant's Motions for a Judgment of Acquittal and New Trial are **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
August 15, 2013